## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA AL-ALI (F/K/A JESSICA FIGUEROA), GERALDINE RONCAL AND MARITZA SOTELO, ON BEHALF OF THEMSELVES AND ALL OTHER PLAINTIFFS SIMILARLY SITUATED, KNOWN AND UNKNOWN, | ) ) ) ) ) ) ) | NO. 1:21-cv- |
| | ) | Honorable Judge |
| Plaintiffs, | ) ) | |
| | ) | Magistrate Judge |
| v. | ) ) | |
| | ) | ***JURY DEMAND*** |
| USA 1 WIRELESS, INC., USA 1 WIRELESS 1, INC., USA 1 WIRELESS 2, INC., USA 1 WIRELESS 3, INC., USA 1 WIRELESS 4, INC., USA 1 WIRELESS 5, INC., USA 1 WIRELESS 6, INC., USA 1 WIRELESS 7, INC., USA 1 WIRELESS 8, INC., USA 1 WIRELESS 9, INC., USA 1 WIRELESS 10, INC., MICHAEL J. YONO, INDIVIDUALLY AND DANI SCHAMMAMI, INDIVIDUALLY | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COME Plaintiffs, **JESSICA AL-ALI (F/K/A JESSICA FIGURORA) (REFERRED TO HEREIN AS "JESSICA AL-ALI") , GERALDINE RONCAL AND MARITZA SOTELO** (each a "Plaintiff", together the "Named Plaintiffs"), on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, by and through their attorneys, JOHN W. BILLHORN AND SAMUEL D. ENGELSON OF THE BILLHORN LAW FIRM, and for their Complaint against Defendants, **USA 1 WIRELESS, INC., USA 1 WIRELESS 1, INC., USA 1 WIRELESS 2, INC., USA 1 WIRELESS 3, INC., USA 1 WIRELESS 4, INC., USA 1 WIRELESS 5, INC., USA 1 WIRELESS 6, INC., USA 1 WIRELESS 7, INC., USA 1 WIRELESS 8, INC.,**

 USA 1 WIRELESS 9, INC., USA 1 WIRELESS 10, INC., MICHAEL J. YONO AND DANI SCHAMMAMI, (collectively, "U1W") (each a "Defendant", collectively the "Defendants"), state as follows:

## I.   NATURE OF ACTION

1.     This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq*, the Chicago Minimum Wage Ordinance ("CMWO"), § 1-24-10 of the Municipal Code of Chicago and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS §115/1 *et seq.*

## II.   JURISDICTION AND VENUE

2.     Jurisdiction arises under the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206-207, and for the supplemental Illinois and municipal statutory claims, pursuant to 28 U.S.C. §1367. Venue lies in the Northern District of Illinois in that during all times relevant to the employment relationship, Plaintiffs performed work in this district and are each a resident of this district and Defendants are or were engaged in business in this district.

## III.   THE PARTIES

3.     Defendants, **USA 1 WIRELESS, INC., USA 1 WIRELESS 1, INC., USA 1 WIRELESS 2, INC., USA 1 WIRELESS 3, INC., USA 1 WIRELESS 4, INC., USA 1 WIRELESS 5, INC.,  USA 1 WIRELESS 6, INC., USA 1 WIRELESS 7, INC., USA 1 WIRELESS 8, INC., USA 1 WIRELESS 9, INC., USA 1 WIRELESS 10, INC.** (together, referred to as "U1W"), own and operate multiple locations of Metro PCS/T-Mobile cell phone retail stores located throughout Chicago and surrounding suburbs. UIW stores cell mobile phone data plans, smartphones, cell phones and related accessories to customers. U1W, is an "enterprise" engaged in commerce or in the production of goods for commerce within the meaning of Section 29 U.S.C. §203(s)(1)(A)(i) and based upon information and belief formed after

2

reasonably inquiry, satisfies the minimum annual gross sales dollar amount required by 29 U.S.C. §203(s)(1)(A)(ii). During all relevant times, U1W was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore, as defined under both the federal and state statutes relied upon, is an "employer."

4.      Defendant, **MICHAEL J. YONO** ("Yono"), is the President and owner of each corporate entity that comprises of U1W. Additionally, Yono participates in day-to-day management and operations of all of U1W's locations. In his capacity as owner and manager of U1W, Yono was vested with the authority to implement and carry out the wage and hour practices of U1W. Plaintiffs were directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Yono and Yono in turn responded to those communications with the authority described above. Thus, at all times relevant hereto Yono was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, is an "employer".

5.      Defendant, **DANI SCHAMMAMI,** is the manager of U1W and is the primary day-to-day manager of all locations and on a regular and constant basis communicates with and directs employees, including Plaintiffs. In his capacity as manager of U1W, Schammami was vested with the authority to implement and carry out the wage and hour practices of U1W. Plaintiffs were directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Schammami and Schammami in turn responded to those communications with the authority described above. Thus, at all times relevant hereto Schammami was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, is an "employer".

3

6.      Furthermore, each of the separate corporate entities that comprise of U1W, along with Defendants Yono and Schammami, worked in concert to control the employee-employer relationship and acted directly or indirectly in relation to job and pay of their employees, including Plaintiffs. Through the entire relevant period, each of the separate corporate entities and individuals that comprise of U1W exercised total control as to Plaintiffs' employment status, schedule and conditions of employment, rates and methods of payment and records. Because each of the separate corporate entities and individuals that comprise of U1W were Joint Employers as defined by the FLSA throughout the duration of Plaintiffs' employment over the course of the relevant period, each of U1W's sperate corporate entities and related individuals are jointly and severally liable to Plaintiffs and the Plaintiff Class under the FLSA. Plaintiffs' allegations of Joint Employer status as between each of U1W's separate corporate entities, Yono and Schammami is incorporated throughout all references the Defendants contained herein.

7.      Plaintiff, **JESSICA AL-ALI (F/K/A JESSICA FIGUEROA** (hereinafter referred to as "Plaintiff" or "Al-Ali") is a former hourly employee of Defendants who, between approximately January 2019 and April 2021, was employed by Defendants as a sales associate and district manager. During one or more weeks within that time frame, Al-Ali was denied overtime pay by Defendants for hours worked over 40 per work week. Defendants, on a regular basis, rounded down and subtracted upwards of sixty (60) minutes from Al-Ali's bi-monthly pay, which resulted in additional non-payment of overtime. Defendants also failed to incorporate earned commissions into the calculation of Al-Ali's regular and overtime rate of pay, resulting in further non-payment of overtime pay. Defendants improperly classified Al-Ali's commissions as payments to a 1099 independent contractor, resulting in failure to by Defendants to pay appropriate taxes to local, state and

4

federal authorities and denial of Social Security, Medicare, Medicaid and unemployment insurance payments to Al-Ali. Additionally, Defendants routinely made unauthorized and improper deductions of their business expenses and other costs from Al-Ali's pay.

8.     Plaintiff, **GERALDINE RONCAL**  (hereinafter referred to as "Plaintiff" or "Roncal") is a former hourly employee of Defendants who, between approximately October 2020 and April 2021, was employed by Defendants as a sales associate. During one or more weeks within that time frame, Roncal was denied overtime pay by Defendants for hours worked over 40 per work week. Defendants, on a regular basis, rounded down and subtracted upwards of sixty (60) minutes from Roncal's bi-monthly pay, which resulted in additional non-payment of overtime. Defendants also failed to incorporate earned commissions into the calculation of Roncal's regular and overtime rate of pay, resulting in further non-payment of overtime pay. Defendants improperly classified Roncal's commissions as payments to a 1099 independent contractor, resulting in failure to by Defendants to pay appropriate taxes to local, state and federal authorities and denial of Social Security, Medicare, Medicaid and unemployment insurance payments to Roncal. Additionally, Defendants routinely made unauthorized and improper deductions of their business expenses and other costs from Roncal's pay.

9.     Plaintiff, **MERITZA SOTELO**  (hereinafter referred to as "Plaintiff" or "Sotelo") is a former hourly employee of Defendants who, between approximately October 2019 and April 2021, was employed by Defendants as a sales associate. During one or more weeks within that time frame, Sotelo was denied overtime pay by Defendants for hours worked over 40 per work week. Defendants, on a regular basis, rounded down and subtracted upwards of sixty (60) minutes from Sotelo's bi-monthly pay, which resulted in additional non-payment of overtime. Defendants also failed to incorporate earned commissions into

the calculation of Sotelo's regular and overtime rate of pay, resulting in further non-payment of overtime pay. Defendants improperly classified Sotelo's commissions as payments to a 1099 independent contractor, resulting in failure to by Defendants to pay appropriate taxes to local, state and federal authorities and denial of Social Security, Medicare, Medicaid and unemployment insurance payments to Sotelo. Additionally, Defendants routinely made unauthorized and improper deductions of their business expenses and other costs from Sotelo's pay.

10.     All other unnamed Plaintiffs known and unknown (hereinafter referred to as "members of the Plaintiff Class" or "similarly situated Plaintiffs"), are past or present hourly employees who work or worked for Defendants and were also not paid an overtime premium at a rate of one and one-half their regular rates of pay for hours worked in excess of 40 in a workweek and were subject to the other illegal pay practices alleged herein.

11.     As employees performing duties for an enterprise engaged in commerce, the named Plaintiffs and all members of the Plaintiff Class were also engaged in commerce as defined by the FLSA.

## IV.   <u>STATUTORY VIOLATIONS</u>

### Collective Action Under the Fair Labor Standards Act

12.     Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiffs as an opt-in representative or collective action, on behalf of themselves and other Plaintiffs similarly situated who have been damaged by Defendants' failure to comply with 29 U.S.C. §201 *et seq.* Count II alleges a willful violation of the FLSA and seeks an additional third year of limitations. Count III seeks liquidated damages under the Fair Labor Standards Act, Section 260.

**Illinois Minimum Wage Law**

13.     Pursuant to the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq.*, Count IV of this action is brought by Plaintiffs to recover unpaid back wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count IV. The claims asserted by Plaintiffs herein under the IMWL are proper for certification under Federal Rule of Civil Procedure 23.

**Chicago Minimum Wage Ordinance**

14.     Pursuant to the Chicago Minimum Wage Ordinance ("CMWO"), § 1-24-10 of the Municipal Code of Chicago, Count V of this action is brought by Plaintiffs to recover unpaid back wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count V. The claims asserted by Plaintiff herein under the CMWO are proper for certification under Federal Rule of Civil Procedure 23.

**Illinois Wage Payment and Collection Act**

15.     Pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS §115/1 *et seq.*, Count VI of this action is brought by Plaintiffs to recover from Defendants unauthorized deductions taken on or after the date ten (10) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count VI. The claims asserted by Plaintiffs herein under the IWPCA are proper for certification under Federal Rule of Civil Procedure 23.

**V.     FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS**

16.     Plaintiffs, at all times pertinent to the cause of action, were employed by Defendants, said employment being integral and indispensable to Defendants' business.

17.     While employed by UIW, Plaintiffs spent many of their working hours working for Defendants' benefit while within the City of Chicago at Defendants' stores located at, including, but not limited to, 7450 N Western Ave., 3411 W. Irving Park Rd. and 5150 W. Belmont Ave.

18.     Each month, Plaintiffs worked at numerous store locations that were physically located within the City of Chicago. On a regular basis, Plaintiffs worked at least two hours while physically present in the City of Chicago during two-week periods and were at all times "Covered Employees" as defined by the CMWO.

19.     Defendants, as corporations and individuals employing "Covered Employees" as set forth above, were each an "Employer" as defined by the CMWO. Additionally, because Defendants were operating and engaging in retail sales within the City of Chicago, they were subject to the license requirements set forth by the Municipal Code of Chicago.

20.     Upon information and belief, U1W was subject to City of Chicago licensing requirements and thus possessed the appropriate license to operate and perform retail business within the City of Chicago. Plaintiffs were covered employees working for covered employers under the CMWO.

21.     Plaintiffs, on a regular basis within the dates of employment referenced above, worked in excess of forty (40) hours in a workweek without pay at a rate of time and one-half for such hours pursuant to the requirements of the federal and state statutes relied upon herein.

22.     Al-Ali was employed by Defendants from approximately January 2019 to April 2021.

23.     Al-Ali was employed by Defendants as a sales associate from approximately January 2019 to May 2020. As a sales associate,  Al-Ali performed general retail associate and sales duties including selling smartphones, mobile phones and other mobile devices, cellular data plans and mobile device accessories. Al-Ali also performed other general labor, maintenance and store upkeep duties as assigned. During her time as a sales associate, Al-Ali was paid by the hour.

24.     As a sales associate, Al-Ali worked mostly at Defendants' Melrose Park and Cicero locations. However, at times, Al-Ali would work shifts at U1W's other locations in Chicago and the surrounding suburbs when those other locations were short-staffed or otherwise in need of additional sales associates.

25.     Al-Ali was employed as a district manager from approximately May 2020 until the end of her employment in April 2021. As district manager, Al-Ali participated in scheduling employees at U1W's various locations and assisted in interviewing along with Yono and Schammami. Al-Ali also collected cash from each of U1W's locations each night to deposit at U1W's bank. Throughout Al-Ali's time as district manager, she remained an hourly employee.

26.     While employed as a district manager between May 2020 and April 2021, Al-Ali split her working time each week between the four U1W locations in operation in that same time frame – Chicago, Maywood, Melrose Park and Cicero, as well as, for approximately a couple months, four or five now closed locations.

27.     Over the course of Al-Ali's employment with Defendants, both as a sales associate and district manager, worked at least 50 hours a week each week and was paid between approximately $15.00 and $20.00 per hour.

28.     Roncal was employed by Defendants from approximately October 2020 to April 2021.

29.     Roncal was employed by Defendants as a sales associate. As a sales associate, Roncal performed general retail associate and sales duties including selling smartphones, mobile phones and other mobile devices, cellular data plans and mobile device accessories. Roncal also performed other general labor, maintenance and store upkeep duties as assigned. During her time as a sales associate, Roncal was paid by the hour.

30.     Over the course of Roncal's employment with Defendants, Roncal worked at least 45 hours a week each week was paid approximately $14.00 per hour.

31.     During Roncal's employment, Roncal worked primarily worked at the Melrose Park location. However, at times, Roncal would work shifts at U1W's other locations in Chicago and the surrounding suburbs when those other locations were short-staffed or otherwise in need of additional sales associates.

32.     Sotelo was employed by Defendants from approximately October 2019 to April 2021.

33.     Sotelo was employed by Defendants as a sales associate. As a sales associates, Sotelo performed general retail associate and sales duties including selling smartphones, mobile phones and other mobile devices, cellular data plans and mobile device accessories. Sotelo also performed other general labor, maintenance and store upkeep duties as assigned. During her time as a sales associate, Sotelo was paid by the hour.

34.     Over the course of Sotelo's employment with Defendants Sotelo worked at least 54 hours a week each week was paid between approximately $12.00 and $13.50 per hour.

35.     During Sotelo's employment, Sotelo worked primarily worked at the Cicero location. However, at times, Sotelo would work shifts at U1W's other locations when those other locations in Chicago and the surrounding suburbs were short-staffed or otherwise in need of additional sales associates.

36.     Upon information and belief, U1W operated at least eight Metro PSC/T-Mobile retail stores at one time over the relevant period while the Named Plaintiffs were employed. As a result of the COVID-19 pandemic and other events, U1W closed four locations in approximately July 2020. Prior to the closure of these additional locations in approximately July 2020, the Named Plaintiffs also worked shifts at these now-closed locations, some of which were located within the City of Chicago. Upon information and belief, other employees previously employed by Defendants at now-closed locations of U1W were damaged by the numerous illegal pay practices alleged herein.

37.     Each of the Named Plaintiffs worked for Defendants in the capacities described above and were non-exempt hourly employees. While employed by Defendants, each of the Named Plaintiffs clocked in and out of each shift using U1W's point of sales ("POS") system.

38.     In most, if not every, week the Named Plaintiffs were employed by U1W, Plaintiffs worked in excess of 40 hours per week. However, Plaintiffs were not paid at a rate of time and one-half their regular rate of pay for those overtime-eligible hours worked in excess of 40 in individual work weeks. Instead, Defendants paid the Named Plaintiffs only their regular straight time hourly rate for all hours worked.

39.     Defendants' failure to pay the Named Plaintiffs overtime premiums for hours worked in excess of 40 in individual work weeks is visible on the face of the Named Plaintiffs'' paystubs. The paystubs of the Named Plaintiffs show their gross bi-monthly pay

calculated by multiplying their total hours worked by only their respective straight time rates of pay. Defendants' calculations failed to compensate the Named Plaintiffs at their overtime rates of pay of time and one-half their regular straight time hourly rates for those hours worked in excess of 40 in individual work weeks in violation of federal, state and local law.

40.     Additionally, on a regular basis, Defendants would "round down", or subtract, up to sixty (60) minutes of time from the Named Plaintiffs' bi-monthly pay checks. For instance, if a Named Plaintiff clocked 116 hours of work in a two-week period in Defendants' POS system, the Named Plaintiff would only be paid for 115 hours on their paystub. Other times, Defendants may deduct thirty (30) minutes from the Named Plaintiffs' bi-monthly pay checks. Upon information and belief, Defendants deducted this time from the Named Plaintiffs' pay for time worked by Plaintiffs before their assigned shifts technically began, such as when a Named Plaintiff clocked in at 8:45 a.m. for a 9:00 a.m. shift.

41.     This practice employed by Defendants deprived the Named Plaintiffs of both their overtime pay and the underlying straight time pay for time worked for the benefit of the employer.

42.     In addition to their hourly pay, the Named Plaintiffs also received some commissions and bonuses for their sales. Defendants implemented a specific, non-discretionary commission and bonus structure by which the Named Plaintiffs would earn certain amounts of money for certain sales benchmarks (i.e. $1 for every $25 in mobile data plan sales, $4 for every $50, $5 for every $60, etc.). The Named Plaintiffs also earned non-discretionary bonuses for meeting certain associate sales goals, such as completing a certain number of overall sales in a pay period, selling a certain number of phones/activations, accessories, etc.

43.     Rather than include these commissions and bonuses as part of the regular W2 paystubs of the Named Plaintiffs as required by law, U1W improperly designated those wages as monies paid to 1099 independent contractors.[1] The Named Plaintiffs were undoubtedly employees of the Defendant-employers. Because of U1W's improper designation of commissions and bonuses as 1099 earnings, U1W failed to include non-discretionary commissions and bonuses earned by the Named Plaintiffs in the calculation of their regular rates and the corresponding overtime rate as required by C.F.R. §778.117, 208.

44.     Furthermore, U1W implemented numerous pay practices to illegally pass their business expenses and losses onto the Named Plaintiffs, namely through improper and unauthorized deductions from wages.

45.     On numerous occasions, U1W would deduct from the wages of the Named Plaintiffs the costs of damaged or stolen merchandise, such as smartphones and accessories. At times, U1W would have merchandise stolen from its stores and would illegally pass off the loss to one of the Named Plaintiffs when the loss occurred during one of their shifts.

46.     U1W would take deductions from or otherwise withhold from the Named Plaintiffs their commission/bonus wages or their regular wages the full cost of the merchandise over the course of multiple weeks. For example, U1W deducted the cost of a stolen iPhone valued at $800 from Plaintiff Roncal via eight separate, consecutive deductions of $100 from her wages. U1W also deducted withheld $780 of commissions from Plaintiff Sotelo to cover the loss of a stolen iPhone. At times, the deductions would appear in the "miscellaneous deductions" section of an employee's paystub.

---

[1] U1W's improper designation of commissions and bonuses as 1099 wages decreased the amount of taxes paid by U1W to the Department of Treasury and the Illinois Department of Revenue. Additionally, this practice deprived the Named Plaintiffs, and those similarly situated, of contributions to Social Security, Medicare, Medicaid and unemployment insurance, etc.

47.     Upon information and belief, if deductions were taken from commissions that were not paid via W2 payroll check because of U1W's improper practice of paying such amounts via 1099, U1W would keep internal records of the deductions since deductions from commissions would not be reflected in the "miscellaneous deductions" section of a paystub.

48.     U1W also on a regular basis withheld other amounts of wages to cover certain costs related to inventory and accessories.

49.     Additionally, U1W implemented an illegal practice of withholding 50% of each of the Named Plaintiffs' first paycheck. The Named Plaintiffs were told that these deductions by U1W were an up-front deposit, or insurance, for U1W against the possibility that associates may steal merchandise for themselves or other theft that may occur on an associate's watch. The Named Plaintiffs never received these amounts back, even when they separated from their positions at U1W. Upon information and belief, U1W implemented this practice as to all hourly employees at all locations, including locations not presently in operation. This practice of failing to pay to the Named Plaintiffs, and those similarly situated, their earned compensation more than 13 days after the end of the pay period in which such wages were earned, violates the IWPCA.

50.     Lastly, beginning in approximately September 2020, U1W began paying its employees, including the Named Plaintiffs exclusively via Zelle QuickPay, a mobile platform used to send and receive money directly from one's bank account. U1W ceased paying its employees, including the Named Plaintiffs via payroll check. As a result of this policy, U1W regularly deducted approximately $12.00 from employee, including the Named Plaintiffs, each pay period to reimburse U1W for transaction costs of paying wages via Zelle QuickPay.

51.     The Named Plaintiffs, nor other members of the Plaintiff Class, were provided an opportunity to continue receiving their wages via payroll check or through another method free of transaction costs. The payment of wages via Zelle QuickPay by U1W to its employees, including the Named Plaintiffs, was not done for the benefit, convenience or request of the employees. Rather, U1W's payment of wages via Zelle QuickPay was solely for U1W's benefit and damaged the Named Plaintiffs and member of the Plaintiff Class by depriving them of earned wages. U1W's deduction of Zelle QuickPay transaction costs from the wages of employees was and is improper and in violation of the IWPCA.

52.     None of the deductions made by U1W from the wages of the Named Plaintiffs and other employees, as described above in paragraphs 44 through 51, were done with proper authorization as required by the IWPCA. U1W failed to provide the Named Plaintiffs, or other similarly situated employees, with deduction authorization forms, as required by the IWPCA. Further, these deductions made by U1W for the purpose of reimbursing itself for realized and unrealized business losses and expenses are not permissible by any federal, state or local law, including the IWPCA. Employees such as the Named Plaintiffs and members of the Plaintiff Class cannot forced to bear the burdens of losses and expenses incurred by Defendants within the regular course of their business.

53.     The total number of hours worked by the Named Plaintiffs and members of the Plaintiff Class and therefore the total number of overtime hours for which additional compensation is owed, is information substantially, if not completely, within the control and possession of Defendants, in that Defendants recorded or should have recorded such hours pursuant to the record keeping requirements found Title 29 CFR, Part 516. To the

extent Defendants lack the records required by 29 CFR Part 516, Plaintiffs and the Plaintiff class will be capable of providing reasonable estimates of that time, as permitted by law.

54.     The claims brought herein by the named Plaintiffs are identical or similar to the claims of other past and present employees who were subject to the non-compliant policies and practices alleged herein. Those past and present employees are entitled to receive Notice of these proceedings and afforded opportunity to join their individual claims.

55.     The non-compliant practices as alleged herein were part of a variety of practices and policies implemented and maintained by Defendants and are common to a group or "class" of past and present employees. Those past and present employees are entitled to receive Notice of these proceedings and afforded opportunity to join their individual claims.

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

1-55.   Paragraphs 1 through 55 are re-alleged and incorporated as though set forth fully herein as paragraphs 1 through 55 of this Count I.

56.     Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq* the named Plaintiffs, and all other Plaintiffs similarly situated, known and unknown, are entitled to compensation for all hours worked and compensation at a rate not less than one and one-half times the regular rate of pay for all hours worked in excess of forty (40) hours, in any week during the two (2) years preceding the filing of this action.

57.     Defendants have at all times relevant hereto failed and refused to pay compensation to its employees, including the named Plaintiffs herein, and all other Plaintiffs similarly situated, known and unknown, as described above.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order:

(a)     awarding back pay equal to the amount of all unpaid overtime compensation for the two (2) years preceding the filing of this Complaint, according to the applicable statute of limitations;

(b)     awarding prejudgment interest with respect to the total amount of unpaid overtime compensation;

(c)     awarding Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' violations of the Fair Labor Standards Act; and,

**(d)**     for such additional relief as the Court deems appropriate under the circumstances.

## COUNT II

## WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT

1-57.    Paragraphs 1 through 57 of Count I are realleged and incorporated as though set forth fully herein as Paragraphs 1 through 57 of Count II.

58.    Defendants' actions as complained of above were done with Defendants' knowledge that the compensation policies and practices at issue were in violation of the statutes alleged, or with a reckless disregard for whether or not the policies and practices were in violation of those statutes. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions relating to the state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

59.    Pursuant to the Fair Labor Standards Act, Plaintiffs and all other employees similarly situated, past or present, are entitled to compensation at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40), in

the three (3) years preceding the filing of this complaint.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order:

(a)     awarding back pay equal to the amount of all unpaid compensation for one (1) additional year, totaling three (3) years preceding the filing of this Complaint;

(b)     awarding prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)     awarding Plaintiffs' reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(d)     for such additional relief the Court deems appropriate under the circumstances.

## COUNT III

## LIQUIDATED DAMAGES
## UNDER THE FAIR LABOR STANDARDS ACT

1-59.   Paragraphs 1 through 59 of Count II are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 59 of Count III.

60.     In denying the named Plaintiffs and members of the Plaintiff Class compensation as described above, Defendants' acts were not based upon good faith or reasonable grounds. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions relating to the state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

61.     The named Plaintiffs and all other past and present employees similarly situated, known and unknown, are entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. §260.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order:

(a)     awarding liquidated damages equal to the amount of all unpaid compensation;

(b)     awarding Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(c)     for such additional relief the Court deems appropriate under the circumstances.

## COUNT IV

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW

1-61.     Paragraphs 1 through 61 of Count III are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 61 of this Count IV.

62.      As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Illinois Minimum Wage Law, 820 ILCS §115/1 *et seq.*

63.     The Illinois Minimum Wage Law provides that an employer who fails to pay the required amount of wages due an employee under the law shall be liable to the underpaid employee or employees for the unpaid wages and for (a) an additional statutory interest penalty of 2% amount of the amount of such underpayments for each month following the date such underpayments that remain unpaid through February 18, 2019 and (b) treble the amount of the underpayments and a statutory interest penalty in the amount of 5% of the underpayments each month for damages incurred thereafter.

64.     Defendants' failure to pay compensation as described above, has been willful and/or in bad faith.

65.     Plaintiffs seek certification of the Illinois Minimum Wage Law violations alleged herein pursuant to Federal Rule of Civil Procedure 23.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order:

(a)     declaring and decreeing Defendants' compensation practices as described herein, and such other violations which may come to light during the prosecution of this matter, in violation of the provisions of the Illinois Minimum Wage Law;

(b)     awarding an amount of damages, to be shown by the evidence, to which Plaintiffs and other members of the Plaintiff Class are entitled;

(c)     allowing this Court to retain jurisdiction of the case until such time it is assured Defendants have remedied the compensation policies and practices complained of herein and are determined to be in full compliance with the law;

(d)     directing Defendants to pay to Plaintiffs' reasonable attorneys' fees, costs, and litigation expenses, as provided by statute;

## COUNT V

### SUPPLEMENTAL MUNICIPAL CLAIM
### VIOLATION OF THE CHICAGO MINIMUM WAGE ORDINANCE

1-65.     Paragraphs 1 through 65 of Count IV are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 65 of this Count V.

66.     Plaintiffs were each an "employee" under the CMWO§ 1-24-10 of the Municipal Code of Chicago and was not exempt from the overtime wage provisions of the CMWO § 1-24-050.

67.     Defendants were each an "employer" as defined in the CMWO§ 1-24-10.

68.     Under § 1-24-040, for all weeks during which Plaintiffs worked more than forty (40) hours, they were entitled to be compensated at a rate of one and one-half times their regular hourly rates of pay.

69.     Defendants' failure and refusal to pay such wages for hours worked in excess of 40 per week was a violation of the maximum hour provisions of the § 1-24-040.

70.     Plaintiffs seeks certification of the Chicago Minimum Wage Ordinance violations alleged herein pursuant to Federal Rule of Civil Procedure 23 as to all similarly situated hourly employees that performed work within the City of Chicago as covered employees for a covered employer, as alleged herein.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)     Judgment in the amount of unpaid overtime compensation found due at the rate of one and one-half times Plaintiffs' regular hourly rate of pay for all hours which Plaintiffs worked in excess of forty (40) hours per week;

(b)     Statutory interest damages in the amount of three times the amount of unpaid overtime;

(c).     Reasonable attorneys' fees and costs incurred in filing and prosecuting this action; and

(d)     for such additional relief the Court deems just and appropriate under the circumstances.

## COUNT VI

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE ILLINOIS WAGE PAYMENT AN COLLECTION ACT

1-70.   Paragraphs 1 through 70 of Count V are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 70 of this Count V.

71.     Plaintiffs, and members of the Plaintiff Class, were each an "employee" under the IWPCA, 820 ILCS § 115/2.

72.     Plaintiffs, and members of the Plaintiff Class, were not exempt from the IWPCA's protections, 820 ILCS § 115/1, *et seq*.

73.     Defendants were each an "employer" under the IWPCA, 820 ILCS § 115/2.

74.      During the course of employment of Plaintiffs and the Plaintiff class, Defendants made deductions from Plaintiffs' wages for business losses and expenses, including stolen merchandise, inventory costs, and other similar costs.

75.     Such deductions (1) were not required by law; (2) were not to Plaintiffs' benefit; (3) were not in response to a valid wage assignment or wage deduction order; and (4) were not made pursuant to a valid, contemporaneous and compliant authorization form, signed and dated by Plaintiffs.

76.     Defendants violated the IWPCA, 820 ILCS 115/9, by making unauthorized and unlawful deductions from Plaintiffs' wages.

77.     Plaintiffs were damaged by Defendants' violation of the IWPCA.

78.     Plaintiffs seeks certification of the IWPCA violations alleged herein pursuant to Federal Rule of Civil Procedure 23.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding them:

(a)     A judgment in an amount to be determined at trial for all of the earned wages, agency withholding deposits and final compensation due to Plaintiffs;

(b)     Statutory interest damages in the amount of two percent (2%) per month of the amount of underpayments;

Respectfully submitted,

*Electronically Filed 05/19/2021*

_____

John William Billhorn

John W. Billhorn
Samuel D. Engelson
BILLHORN LAW FIRM
53 West Jackson Blvd., Suite 401
Chicago, IL 60604
(312) 853-1450

Attorneys for Plaintiffs, and all other
Plaintiffs similarly situated, known or
unknown.